IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FRANK CARILLO,**

    **Plaintiff,**

vs.                                                                                    **No. CIV 03-0125 RB/LCS**

**DR. ANTHONY L. ANDERSON, AMERICAN
DENTAL ASSOCIATION, EQUITABLE LIFE
ASSURANCE SOCIETY OF THE UNITED
STATES, TRUSTEES OF THE AMERICAN
DENTAL ASSOCIATION MEMBERS RETIREMENT
TRUST, AND THE AMERICAN DENTAL
ASSOCIATION MEMBERS RETIREMENT
PLAN,**

    **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

    **THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc.15), filed on July 10, 2003.  The Court has jurisdiction pursuant to 28 U.S.C. §1331 and 29 U.S.C. §1132(e)(1).  Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion is well-taken and should be granted.

**I.  Background**

    On January 27, 2003, Plaintiff filed his complaint, seeking restitution for breach of contract and equitable relief under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001, *et seq.*  On July 10, 2003, the American Dental Association, the Trustees of the American Dental Association Members Retirement Trust, and the American Dental Association Members Retirement Plan filed  a motion to dismiss for failure to state a claim, for lack of personal jurisdiction, or in the alternative for summary judgment.  The remaining two

Defendants, Equitable Life Assurance Society of the United States and Dr. Anthony L. Anderson, have both filed an answer to Plaintiff's complaint, but do not join in this motion.

## II. Facts

Plaintiff, Frank Carillo (hereinafter "Mr. Carillo") was married to the late Betty R. Carillo (hereinafter "Ms. Carillo"). Ms. Carillo was an employee of Dr. Anthony L. Anderson (hereinafter "Dr. Anderson") for over 20 years. Compl. ¶ 2. During Ms. Carillo's employment with Dr. Anderson, she participated in a retirement plan under the American Dental Association Members Retirement Plan (hereinafter "Retirement Plan"). Dr. Anderson offered the Retirement Plan to his employees to provide them with retirement and disability benefits. *Id.* ¶ 3. Mr. Carillo alleges he was a beneficiary under the Retirement Plan within the meaning of ERISA. *Id.* ¶ 4.

The American Dental Association (hereinafter "ADA") is a non-profit association organized under the laws of Illinois. The ADA established the ADA Members Retirement Trust (hereinafter "Retirement Trust") to sponsor pension and profit sharing plans of members and associates of the ADA. *Id.* ¶¶ 6, 7. The Retirement Trust continues to administer and implement the terms and conditions of the Retirement Plan. Members of the Council on Insurance of the ADA serve as Trustees of the Retirement Trust (hereinafter "Trustees").

Ms. Carillo was able to borrow from her Retirement Plan. *Id.* ¶ 38. Beginning on or about October 27, 1996 and continuing until September 17, 1998, Defendants approved and made loans to Ms. Carillo. *Id.* ¶ 39. In order to apply for each loan, Defendants required Ms. Carillo to execute a loan request form. Equitable, the Retirement Plan, and the Trustees provided Dr. Anderson the loan request forms to assist him in complying with the mandates of ERISA and the

2

terms and conditions of the Retirement Plan.  *Id.* ¶ 42.  The loan request forms required Ms. Carillo and Mr. Carillo to sign them in the presence of a notary or Retirement Plan representative.  *Id.* ¶ 43.  Ms. Carillo forged her husband's signature on the loan request forms and returned them to Dr. Anderson.  *Id.* ¶ 45.  Dr. Anderson later executed the loan requests as the Retirement Plan representative.  *Id.*

Mr. Carillo alleges Dr. Anderson executed the loan requests and then delivered the loan request forms to ADA, Equitable, and the Trustees.  *Id.* ¶ 47.  Because the loan request forms were not notarized, Mr. Carillo alleges Defendants were on inquiry notice that the loan request forms had not been executed in accordance with the terms and conditions of the Retirement Plan and ERISA.  *Id.* ¶ 48.  When Ms. Carillo terminated her employment with Dr. Anderson in June 2000, she had borrowed the maximum amount permissible under the Retirement Plan.  *Id.* ¶ 49.  Neither Ms. Carillo nor any Defendants ever informed Mr. Carillo about the loans Ms. Carillo had acquired.  *Id.* ¶¶ 53, 54.  Ms. Carillo died on July 25, 2001.

### III.  Standard of Review

In Mr. Carillo's response, he asks the Court to convert Defendants' Motion to Dismiss to a summary judgment motion because Defendants have attached an affidavit to their Rule 12(b)(6)[1] motion.  Pl.'s Resp. at 7.  Mr. Carillo is correct that a 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court."  FED. R.CIV. P. 12(b).  However, Rule 12(b)(6) of the Federal Rules

---

1. Rule 12(b) provides in pertinent part:  "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  FED. R. CIV. P. 12(b).

of Civil Procedure gives a district court discretion whether or not to exclude matters outside the pleadings so as to retain the original posture of the motion.

Moreover, Mr. Carillo refers to the Retirement Plan and the Loan Forms in his Complaint; these documents are central to his claims. Mr. Carillo also attached the Loan Forms to the Complaint and attached the Retirement Plan as Exhibit B to his response. Accordingly, the Court may consider these documents part of the pleadings for purposes of Rule 12(b)(6) dismissal without converting the motion into a motion for summary judgment. *See GFF Corporation v. Associated Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, the court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal); *see also, County of Santa Fe v. Public Service Co. of N. M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) (in ruling on a Rule 12(b)(6) motion, federal court may consider documents referred to in complaint if documents are central to the plaintiff's claim and parties do not dispute the documents' authenticity). The Court has considered only the Retirement Plan and the Loan Forms in its ruling and thus will proceed under a motion to dismiss standard.

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); FED.R.CIV.P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party. *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). In accepting the complaint's allegations as true, the court must consider whether the complaint,

standing alone, is legally sufficient to state a claim upon which relief may be granted. *Ordinance 59 Ass'n v. United States Dep't of Interior*, 163 F.3d 1150, 1152 (10th Cir. 1998). "Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading, but also to protect the interest of justice." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

**IV. Discussion**

Defendants contend dismissal of Mr. Carillo's action is appropriate for the following reasons: (1) Mr. Carillo has failed to state a claim against the Trustees and the Retirement Plan because these Defendants are not legal entities; (2) Defendants are not subject to personal jurisdiction in New Mexico; and (3) Defendants ADA, the Trustees, and the Retirement Plan are not liable as fiduciaries or co-fiduciaries under ERISA.

**A. Whether the Trustees and the Retirement Plan are Legal Entities that may be Sued?**

Defendants argue the Trustees and the Retirement Plan are not legal entities that may sue or be sued. Defendants cite to *State ex rel. Overton v. New Mexico State Tax Commission*, 81 N.M. 28, 462 P.2d 613 (1969), as authority to support their position. However, Defendants' cited authority was decided five years prior to the enactment of ERISA. 29 U.S.C. §1001, *et seq.* Moreover, Defendants argue that an unincorporated association, as discussed in *Overton,* is the legal equivalent to an ERISA Retirement Plan or the Trustees. Yet, this same argument was rejected by the Tenth Circuit in *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365 (10th Cir. 1998).

In *Lenon*, the Court held an ERISA retirement plan was a trust rather than an unincorporated association. *Id.* at 1370 (holding that "[r]egardless of what law applies, we cannot see how it can seriously be argued that an employee benefit plan under ERISA is not an express trust"). The *Lenon* court premised its holding on ERISA's requirement that a retirement plan have named fiduciaries with authority to manage and control the plan pursuant to 29 U.S.C. § 1102(a)(1). The Court held that this unique fiduciary relationship created an express trust and distinguished the ERISA retirement plan from an unincorporated association. *Id.* As a trust able to initiate legal action pursuant to 29 U.S.C. § 1132(a), an incongruity arises if it is simultaneously immune from suit. *See Lenon*, 136 F.3d at 1370.

The rationale of *Lenon* extends to the Trustees. The Trustees are also fiduciaries under the ERISA retirement plan. *See id.* (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980) (holding a trustee is a real party to the controversy when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others)). Here, the Trustees collect contributions from employers and employees. Pl.'s Resp. to Defs.' Mot. to Dismiss 9-10; Ex. A, Attachment 1, p.2, ¶ 4.01. The Trustees are accountable to the employer for the funds transferred to the trust fund. *Id.* The Trustees implement pension and profit sharing plans of members and associates of the ADA. Pl.'s Resp. to Defs.' Mot. to Dismiss; Ex. A, Attachment 1, p.1, ¶ 1.01. The Trust itself requires that no part of the principal and income of the Trust Fund ever be diverted to purposes other than the exclusive benefit of participants and their beneficiaries. Pl.'s Resp. to Defs.' Mot. to Dismiss; Ex. A, Schedule 1, p.1, ¶ 1.02. Accordingly, the Trustees and the Retirement Plan are subject to suit.

**B. Whether the Court can assert Personal Jurisdiction Over Defendants?**

Personal jurisdiction exists if a party has been properly served and has sufficient contacts with the forum to satisfy procedural due process. *Packerware Corp. v. B & R Plastics, Inc.*, 15 F.Supp.2d 1074, 1076 (D. Kan. 1998). Defendants are amenable to process in a federal question case if the federal statute authorizes service of process on them or if they "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." *Id*. (quoting FED. R.CIV. P. 4(k)(1)(A)). In this case, Defendants are subject to statutory nationwide service of process pursuant to 29 U.S.C. § 1132(e).[2] Therefore, the Court need only determine whether exercising jurisdiction over Defendants is consistent with the Due Process Clause.

In this context, "the personal jurisdiction requirement flows from the Due Process Clause of the Fifth Amendment and restricts judicial power in order to protect the individual's liberty interest." *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1211 (10th Cir. 2000) (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Due process protects individual litigants against the burdens of litigation in an unduly inconvenient forum and requires Mr. Carillo's choice of forum to be fair and reasonable. *Peay*, 205 F.3d at 1211. The burden is on Defendants to show the exercise of jurisdiction in the chosen forum will make litigation so gravely difficult and inconvenient that Defendants are at a severe disadvantage in comparison to their opponent. *Id.* at 1212 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

---

2. Section 1132(e)(2) states: "Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).

In determining whether a chosen forum is unduly inconvenient, the Tenth Circuit considers the following factors: (1) the extent of Defendants' contacts with the place where the action was filed; (2) the inconvenience to Defendants of having to defend in a jurisdiction other than that of their residences or places of business; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of Defendants' residences or places of business; and (5) the nature of the regulated activity in question and the extent of impact that Defendants' activities have beyond the borders of their states of residence or businesses. *Peay*, 205 F.3d at 1212. However, the Tenth Circuit, in *Peay*, emphasized "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.* (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997)).

Defendants contend this Court does not have personal jurisdiction over them under New Mexico's long arm statute, N.M.Stat.Ann. § 38-1-16 (Michie 1978).[3] New Mexico's long-arm statute asks: (1) whether the acts of defendant are specifically set forth in this state's long-arm statute; (2) whether the plaintiff's claim arises out of and concerns such alleged acts; and (3) whether the defendant's acts establish minimum contacts to satisfy constitutional due process concerns. *CABA Ltd. Liability Co. v. Mustang Software, Inc.*, 127 N.M. 556, 561, 984 P.2d 803, 808 (N.M. Ct. App. 1999) (citing *Doe v. Roman Catholic Diocese of Boise, Inc.*, 121 N.M. 738, 742, 918 P.2d 17, 21 (N.M. Ct. App. 1996)).

---

3. Section 38-1-16(a) states in pertinent part: "Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from: (1) the transaction of any business within this state; ... (3) the commission of a tortious act within this state; . . . ." N.M.Stat.Ann. § 38-1-16.

Defendants argue they do not have minimum or continuous contacts with New Mexico to subject them to this Court's jurisdiction. Relying on a traditional personal jurisdiction analysis, Defendants claim they do not have any offices, telephone listings, phone services, real property, personal property, agents, salespersons, or solicitors in New Mexico. However, when the federal statute authorizes service of process, the traditional personal jurisdiction analysis does not apply. *See Peay*, 205 F.3d at 1208-1213.

In *Peay*, the district court applied a traditional personal jurisdiction test to an ERISA claim, and held defendants lacked "sufficient contacts" with Utah to support the exercise of personal jurisdiction over them. *Id.* Central to the district court's decision was the fact that defendants did not have an address, an office, a statutory agent, a telephone listing, employees, active Plan participants, or other operations in Utah. *Id.*

The Tenth Circuit reversed, holding the traditional personal jurisdiction test applied by the district court was the wrong legal standard; rather, when federal question jurisdiction was at issue and the federal statute authorized service of process, a lesser showing of minimum contacts was required to comport with the Fifth Amendment's Due Process Clause. *Id.* The *Peay* Court found defendants' acts of pre-certifying and paying a portion of a beneficiary's medical expenses at a Utah hospital enough to subject defendants to the court's personal jurisdiction without offending due process. *Id.*

Applying the principles in *Peay* to the present case, the ADA, the Trustees, and the Retirement Plan have sufficient contacts with New Mexico to subject them to the Court's personal jurisdiction without offending due process. Ms. Carillo contributed to the Retirement Plan through wage withholdings from her employer in New Mexico. Pl.'s Resp. to Defs.' Mot. to

9

Dismiss 6 ¶ 21; Ex. A, p.12.  Ms. Carillo obtained loans from the Trustees and the Retirement Plan in New Mexico.  Pl.'s Resp. to Defs.' Mot. to Dismiss 13.  The Retirement Plan and the Trustees were both created by the ADA and are currently identified as ADA Retirement Programs.   Pl.'s Resp. to Defs.' Mot. to Dismiss 5 ¶ 18; Ex. A.  The ADA and Trustees have a website and catalog available to New Mexico residents.  Defs.' Mem. Br. in Supp. of Mot. to Dismiss 13.

Moreover, even though Defendants may be inconvenienced by defending this action in New Mexico, this inconvenience does not rise to the level of constitutional concern.  Despite members of the ADA, the Trustees, and the Retirement Plan residing in Illinois, modern methods of communication and transportation greatly reduce the physical burden they may experience in defending the present suit in New Mexico.  Defendants have not advanced any argument that either judicial economy will be preserved or discovery proceedings simplified by dismissing Mr. Carillo's complaint.  In fact, discovery and access to witnesses will be enhanced because the participant and the employer are located in New Mexico.  Therefore, asserting personal jurisdiction over Defendants will not make litigation so difficult and inconvenient as to offend due process.

**C.  Whether the ADA, the Trustees, and the Plan are Liable As Fiduciaries Under ERISA?**

Defendants argue the ADA, the Trustees, and the Retirement Plan are not liable as fiduciaries or co-fiduciaries within the meaning of ERISA. *See* 29 U.S.C. §§1002(21)(A) & 1105.  Specifically, Defendants claim Mr. Carillo alleges no facts to show Defendants acted in either a fiduciary or co-fiduciary capacity as it relates to any of Mr. Carillo's injuries.  Section 1002(21)(A) states in pertinent part:

> [A] person is a fiduciary within respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under Section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). Thus, a person is liable as a fiduciary if he exercises discretionary authority over an ERISA plan, its administration, or its assets. *See O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 96 (1st Cir. 1982). However, the mere exercise of physical control or the performance of mechanical administrative tasks is insufficient to confer fiduciary liability. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998).

In the instant case, Mr. Carillo alleges no facts to show Defendants failed to properly perform their fiduciary duties. Mr. Carillo alleges "Defendants breached their obligation to Plaintiff by failing to witness the consent of Plaintiff to the Loans or to assure that the consent of Plaintiff was witnessed by a notary." Comp. ¶ 61. Mr. Carillo attributes the breach to Defendants by alleging "[b]ecause the forms were not notarized, the Defendants were on inquiry notice that the Forms had not been executed in accordance with the terms and conditions of the Plan and the requirements of ERISA." Comp. ¶ 48. However, the alleged breach here only applies to Dr. Anderson. Defendants were not on inquiry notice in that a notary was only one alternative for a participant to procure a loan. 29 U.S.C. §1055(c)(2)(A)(iii).

Pursuant to §1055(c)(4)(A), a participant desiring to procure a loan using his/her accrued benefit as security for such loan must have his/her spouse's consent. Section 1055(c)(4)(A). provides:

> Each plan shall provide that, if this section applies to a participant when part or all of the participant's accrued benefit is to be used as security for a loan, no portion of the participant's accrued benefit may be used as security for such loan unless--
> (A) the spouse of the participant (if any) consents in writing to such use during the 90-day period ending on the date on which the loan is to be secured, and (B) requirements **comparable to the requirements of paragraph (2) are met with respect to such consent.**

29 U.S.C. § 1055(c)(4)(A)(emphasis added). Paragraph 2 of this section states, "the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative **or** a notary public." §1055(c)(2)(A)(iii)(emphasis added). Mr. Carillo does not dispute the Loan Forms were signed by Dr. Anderson, along with his allegedly fraudulent signature. Because a notary was not mandated, Defendants were not on inquiry notice that Dr. Anderson, the Plan Administrator, was not executing the Loan Forms in accordance with the terms and conditions of the Plan and the requirements of ERISA.

Moreover, a trustee is not liable as a fiduciary for acts done outside the scope of its delegated responsibilities. *See Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12 (1st Cir. 1998) (holding trustee not liable as a fiduciary for misvaluation of plan's real estate investments, where trust agreement shifted all significant discretion and control over designated assets to investment manager, and authorized trustee to perform mainly administrative and ministerial functions). Here, the Retirement Plan designates the employer, Dr. Anderson, as the Plan Administrator who is solely responsible for administering the loan program. Pl.'s Ex. B. at 66. Defendants mainly performed administrative and ministerial functions with respect to the Retirement Plan loan program. *Id.* at 73, §§ 17.1-17.9. Defendants were not obligated to inquire as to whether Mr. Carillo actually consented to Ms. Carillo's loan application. Defendants had no reason to replace Dr. Anderson as the Retirement Plan Administrator before Ms. Carillo's loan

was approved.  Accordingly, Defendants are not liable as fiduciaries and, as a result, Mr. Carillo's complaint should be dismissed.

## V. Conclusion

The Retirement Plan and Trustees are legal entities under ERISA and personal jurisdiction over the ADA, the Trustees, and the Retirement Plan does not offend due process.  However, the ADA, the Trustees, and the Retirement Plan are not liable as fiduciaries within the meaning of ERISA.  Accordingly, Defendants' motion to dismiss should be granted.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 15), filed on July 10, 2003, is **GRANTED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**